**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MARIA KISHEL,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:08-1585** |
| **v.** | : | **(CAPUTO, D.J.)** |
| | | **(MANNION, M.J.)** |
| **VALLEY VIEW SCHOOL DISTRICT** | : | |
| **and JOSEPH M. DALEY,** | : | |
| **Defendants** | : | |
| | : | |

## REPORT AND RECOMMENDATION[1]

Pending before the court is the defendants' motion for summary judgment. (Doc. No. 17). Based upon the court's review of the motion and related materials, it is recommended that the defendants' motion be granted.

## I. PROCEDURAL HISTORY

By way of relevant background, the plaintiff filed the instant action on August 23, 2008, in which she alleges gender discrimination in violation of Title VII, the Pennsylvania Human Relations Act, ("PHRA"), and 42 U.S.C. §1983 and First Amendment retaliation in violation of §1983. (Doc. No. 1). An answer to the complaint was filed by the defendants on September 25, 2008. (Doc. No. 8).

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

After the completion of discovery, on September 15, 2009, the defendants filed the instant motion for summary judgment. (Doc. No. 17). A statement of material facts, (Doc. No. 18), and supporting brief, (Doc. No. 19), were filed on September 29, 2009[2]. The plaintiff filed a brief in opposition to the defendants' motion for summary judgment, (Doc. No. 22), along with a responsive statement of facts, (Doc. No. 23), on October 16, 2009. A reply brief was filed by the defendants on November 10, 2009. (Doc. No. 26).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The Supreme Court has stated that:

---

[2]In a footnote in her responsive statement of facts, the plaintiff moves to strike the defendants' motion for summary judgment and statement of facts arguing that they were untimely filed pursuant to Local Rule 56.1, which requires that motions for summary judgment be accompanied by a separate statement of material facts for which the moving party contends there is no genuine issue to be tried. See M.D. Pa. Local Rule 56.1. This motion should be denied. While it is true that the defendants did not submit a statement of material facts simultaneously with their motion for summary judgment filed on September 16, 2009, the statement was later filed on September 29, 2009, in conjunction with the defendants' supporting brief and materials. There is no indication that the plaintiff was prejudiced by the defendants' belated filing of their statement of facts. See Kerwin v. Varner, 2006 WL 3742738 (M.D.Pa., 2006)(Caldwell, J.).

2

". . . [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Id. The moving party can discharge that burden by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Issues of fact are genuine "only if a reasonably jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988)(citations omitted). Material facts are those which will effect the outcome of the trial under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court may not weigh the evidence nor make credibility determinations. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn

therefrom in the light most favorable to the nonmoving party. Id. at 393.

If the moving party meets his initial burden, the opposing party must do more than raise some metaphysical doubt as to material facts, but must show sufficient evidence to support a jury verdict in its favor. Id.

## III.  DISCUSSION

In her complaint, the plaintiff alleges that she works for the Valley View School District as an Assistant Principal for the Intermediate School. (Doc. No. 1, ¶10). The plaintiff alleges that she has worked for the Valley View School District for over seventeen years. (Id. at ¶12).

On or about November 3, 2006, the plaintiff alleges that she applied for a Principal position at the High School. (Doc. No. 1, ¶13). According to the plaintiff's complaint, during her employment with the Valley View School District, the District had never hired a female for the High School Principal position, (Id. at ¶15), and she was the only woman applicant who interviewed for the position in 2006. (Id. at ¶14). Although she was qualified for the position, the plaintiff alleges that she did not get the position. (Id. at ¶16). Instead, the plaintiff alleges that a male, James Timmons, was selected for the position. (Id. at ¶17).

On or about December 11, 2006, the plaintiff alleges that Valley View had a special School Board meeting, at which James Timmons was selected for the High School Principal position, and after that appointment, the School

4

Board moved for the hiring of Brian Durkin, a male, as the Assistant Principal for the High School. (Id. at ¶¶18-19). The plaintiff alleges that there was no posting or interviews for the Assistant Principal position, (Id. at ¶20), and that she was more qualified for the position of Assistant Principal than Mr. Durkin, (Id. at ¶21).

At the special School Board meeting, the plaintiff alleges that she spoke out about the hiring process, which she claims was improper since no interviews or posting occurred for the Assistant High School Principal position. (Doc. No. 1, ¶24). The next day, the plaintiff alleges that she was summoned to defendant Daley's office, and retaliated against for speaking out at the Board meeting. (Id. at ¶25). According to the plaintiff, defendant Daley stated "that he could have made a bigger fool of [her] last night, and that [she] was no longer being considered for positions due to [her] comments at the Board meeting." (Id. at ¶26).

In Count I of her complaint, the plaintiff alleges gender discrimination in violation of Title VII, the PHRA, and §1983. (Doc. No. 1, ¶¶27-32). Specifically, the plaintiff alleges that the defendants had a history of not hiring women for the High School Principal position. (Id. at ¶28). She further alleges that the defendants intended to discriminate against her because of her gender when they failed to follow their own procedures and, instead, hired a male with no principal experience for the Assistant Principal position without conducting an interview for the position. (Id. at ¶¶29-30).

5

In Count II of her complaint, the plaintiff alleges First Amendment retaliation in violation of §1983. (Doc. No. 1, ¶¶33-37). Specifically, the plaintiff alleges that her speech exposing the improper hiring practices at the School Board meeting was a matter of public concern since the community has a right to know that the School District was violating its own hiring policy. (Id. at ¶34). Moreover, the plaintiff alleges that she was speaking as a citizen at the School Board meeting. (Id. at ¶35). The next day, the plaintiff alleges that she was summoned to defendant Daley's office and retaliated against for speaking out at the Board meeting in that defendant Daley stated that "he could have made a bigger fool of [her] last night, and that [she] was no longer being considered for positions due to [her] comments at the Board meeting." (Id. at ¶¶ 36-37).

Finally, in Count III of her complaint, the plaintiff claims individual liability against defendant Daley pursuant to the PHRA. (Doc. No. 1, ¶¶38-40). Here, the plaintiff alleges that defendant Daley, as the supervisor, was aiding and abetting Valley View School District when it discriminated against her based upon her gender; when it failed to hire her for the High School Principal position and not considering her for the Assistant High School Principal position. (Id. at 39).

Based upon the above claims, the plaintiff is seeking installment in either the Assistant Principal or Principal position at the Valley View High School, as well as various forms of monetary damages.

In response to the allegations set forth in the plaintiff's complaint, the defendants have submitted a statement of material facts, the following of which are supported by the record[3]:

Defendant Daly has worked for the Valley View School District since 1973. (Doc. No. 18, Ex. 3, pp. 10, 15). In 2000, defendant Daley became the Superintendent of the District. (Id.). At that time, defendant Daley's position as the Assistant High School Principal was filled by James Timmons[4]. (Id. at p. 19).

In or around 2003, Mr. Timmons left the Valley View School District to

---

[3]It is noted that the plaintiff has denied a majority of the defendants' facts, seventy-seven of the ninety-five. Upon review, a large number of the plaintiff's denials are simply invalid. For example, in some instances, the plaintiff fails to cite to support in the record for her denials or provides counter statements of fact which are simply unrelated to the statement for which she is providing a response. Other times the denials are in direct controversy with the plaintiff's own sworn deposition testimony. In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn from the evidence in a light most favorable to the plaintiff as the non-moving party. However, this favorable consideration does not extend to allow the plaintiff to deny facts without a valid basis. Plaintiff's counsel is reminded that Fed. R. Civ. P 11(b) sets forth counsel's responsibilities when making representations to the court. Requiring the court to review numerous denials, when many of them appear spurious or disingenuous could result in the imposition of sanctions for future violations. Professional advocacy does not include denial of established facts.

When necessary to this recommendation, the court has noted those facts denied by the plaintiff which lack an adequate basis.

[4]Although the plaintiff denies this fact as stated, the uncontradicted testimony speaks for itself.

take a position as Principal in a New Mexico school[5]. (Id. at p. 20). Mr. Timmons returned to Pennsylvania the following year to become a Principal in the Old Forge School District. (Id.). Mr. Timmons then returned to the Valley View School District to the position of Assistant Principal of the High School, which is the position he held at the time he interviewed to be the Principal of the High School. (Id.).

With respect to the plaintiff's qualifications, she received her Bachelor of Science in Education, Early Childhood and Elementary Education from Marywood College, and her Masters of Education in 2005 from Wilkes University. (Doc. No. 18, Ex. 2, pp. 7-8). The plaintiff received her K through 12 Principal certification in 2005. (Id. at p. 8).

The plaintiff was hired by the Valley View School District as a First grade teacher for the 1991/1992 school year. (Doc. No. 18, Ex. 2, p. 9). The plaintiff worked as a First grade teacher until the end of the 2002 school year. (Id. at pp. 9-10). During the time that the plaintiff worked as a First grade teacher, she did not hold any administrative positions. (Id. at p. 10).

Defendant Daley offered the Gifted Supervisor position to the plaintiff, and starting in 2003, the plaintiff was employed as the Gifted Supervisor for grades K through 12. (Doc. No. 18, Ex. 2, pp. 10, 12). This position was not

---

[5]The plaintiff denies this fact as stated questioning the faithfulness of Mr. Timmons to the Valley View School District. However, she admits that Mr. Timmons held the position of Principal in two school districts before returning to Valley View as the Assistant Principal of the High School.

posted, nor were resumes or applications for the position submitted. (Doc. No. 18, Ex. 2, p. 13).

In July of 2005, the plaintiff was appointed to the position of Assistant to the Elementary Principal at the Intermediate School. (Doc. No. 18, Ex. 2, p. 10). The School Board voted on the plaintiff being given this position. (Doc. No. 18, Ex. 2, p. 15). This position was not posted, nor were resumes or applications for the position submitted. (Doc. No. 18, Ex. 2, pp. 15-17).

From July of 2005 through the end of the 2006 school year, the plaintiff held the positions of both the Supervisor of Gifted Education and Assistant to the Elementary Principal. (Doc. No. 18, Ex. 2, p. 18).

In July of 2006, the School Board adopted a recommendation by defendant Daley and gave the plaintiff the position of Assistant Principal at the Intermediate School. (Doc. No. 18, Ex. 2, p. 24).

Prior to working in the Valley View School District, the plaintiff had not held any teacher or administrator position with any other school district. (Doc. No. 18, Ex. 2, p. 25). During the time that she worked for the Valley View School District, the plaintiff testified that she had never taught in the high school, but had completed a practicum of approximately fifty hours over a half a year period in the high school under Mr. Burns, the Assistant Principal. (Doc. No. 22, Attached Kishel Deposition, pp. 78-79).

At some point in time, the plaintiff heard that Mr. Kanavy, then Principal of the High School, was being appointed to the position of the Director of

9

Curriculum. (Doc. No. 18, Ex. 2, p. 27). Subsequently, the High School Principal position was posted but the Assistant Principal position was not posted because the vacancy of this position would depend on who was selected to fill the Principal position. (Doc. No. 18, Ex. 3, p. 22).The plaintiff does not recall having any discussions with defendant Daley regarding the Principal position prior to turning in her letter of interest and resume to him. (Doc. No. 18, Ex. 2, p. 28).

According to the defendants' materials, the interviews for the Principal position were conducted by nine individuals: defendant Daley, Don Kanavy, the Assistant Superintendent, Ellen Nielsen, a School Board member, Jeanie Pilch, the Director of curriculum, Mr. Violanti, Middle School Principal, Mr. Sweeney, Assistant Middle School Principal, Cindy Cerminaro, Chair of the Social Studies Department, Maria Betti, Chair of the Math Department, and Dave Angeloni, Director of Special Education[6]. (Doc. No. 18, Ex. 3, p. 38). All candidates for the High School Principal position were interviewed by the same nine people[7].(Id. at 41). Four of the individuals who interviewed the

---

[6]The plaintiff denies this statement claiming that there is no evidence in the record to support this fact. However, the testimony of defendant Daley is evidence. Moreover, the defendants have submitted statements from the nine individuals listed who all confirm that they were involved in the interview process for the Principal position.

[7]See n.6.

plaintiff were women[8]. (Doc. No. 18, Ex. 2, p. 67). The plaintiff was interviewed for the position in late November or early December of 2006. (Doc. No. 18, Ex. 2, p. 29). The plaintiff was the only women that interviewed for the High School Principal position. (Doc. No. 18, Ex. 3, p. 90).

After conducting the Principal interviews, defendant Daley asked the panel how they saw the candidates, how they ranked them, and how they rationalized their selections[9]. (Doc. No. 18, Ex. 3, pp. 71-72). When discussing the plaintiff, the overall thought of the committee was that most of her answers focused on surveys and forming committees which was a concern, as this was theory and philosophy and not a hands-on approach to special education school law, high school curriculum, or functions of what goes on at a high school level[10]. (Doc. No. 18, Ex. 3, p. 114; Ex. 4B).

---

[8]The plaintiff denies this statement, again arguing that there is no evidence in the record other than the word of defendant Daley to support this fact. However, the plaintiff's own testimony reflects that four of the nine individuals who interviewed her were women. (Doc. No. 18, Ex. 2, p. 67).

[9]The plaintiff denies this statement arguing that there is no documentation to prove any such discussions. However, defendant Daley has provided deposition testimony that this is what occurred in the interviewing process. The plaintiff has provided no evidence to the contrary.

[10]Plaintiff denies this statement noting that one of the interviewers, Ms. Cerminaro, stated that   ". . . I was impressed with how Mrs. Maria Kishel presented herself . . ." (Doc. No. 18, Ex. 4). However, in context, Ms. Cerminaro stated "While I was impressed with how Mrs. Maria Kishel presented herself, Mr. James Timmons had more experience than Mrs. Maria Kishel in the role of an administrator, and he presented himself and his
(continued...)

The plaintiff testified that she does not know how Mr. Timmons performed in his interview. (Doc. No. 18, Ex. 2, p. 59). The plaintiff agrees, however, that Mr. Timmons, who received the High School Principal position, worked in a high school environment for a longer period of time than she had. (Doc. No. 18, Ex. 2, p. 56).

Prior to his appointment as Assistant Principal in the Valley View High School, Mr. Durkin was a Guidance Counselor in the Western Wayne School District. (Doc. No. 18, Ex. 3, pp. 46). In addition, he served as Head Teacher three days per week overseeing the teachers and dealing with disciplinary problems when the assigned administrator was not in the building[11]. (Doc. No. 18, Ex. 3, pp. 47-48).

With respect to the appointment of Mr. Durkin as Assistant Principal, the defendants' materials provide that, during his interview, he was very factual,

---

[10](...continued)
leadership skills in a more concrete and professional manner." (Id.). The plaintiff also denies this statement citing to a letter by defendant Daley in which he informs the plaintiff that she was not the successful candidate for the Principal position, but compliments her for the manner in which she conducted herself during the interview. This, however, does not create a genuine issue of material fact with respect to whether the overall feeling was that the plaintiff's reliance on surveys and committees was a concern.

[11]The plaintiff denies this statement "[s]ince [she] has disputed interested witness Daley's allegations, . . ." As previously provided, defendant Daley's deposition testimony is evidence in this case. The plaintiff has provided no evidence to the contrary and, therefore, the defendants' evidence is accepted as stated.

knew the law, and interviewed stronger than the plaintiff[12]. (Doc. No. 18, Ex.

4A). Defendant Daley testified that the general consensus of the committee

was that Mr. Durkin and the plaintiff were about equally qualified on paper, but

that Mr. Durkin answered the committee's questions better than the plaintiff

had. (Doc. No. 18, Ex. 3, p. 147). The plaintiff testified that she does not know

how Mr. Durkin performed in his interview[13]. (Doc. No. 18, Ex. 2, p. 59).

Some time after the plaintiff's interview, she was called into defendant

Daley's office and told that Mr. Timmons would be getting the High School

Principal position and Mr. Durkin would be getting the Assistant High School

Principal position. (Doc. No. 18, Ex. 2, pp. 31-32). At that time, the plaintiff

questioned Mr. Durkin's experience as compared to hers and was told that

---

[12]Plaintiff denies this statement, not on its substance, but claiming that Mr. Durkin received preferential treatment because he was interviewed by a smaller group of the nine member panel, all of which were male. Again, the plaintiff claims that there is no evidence to support the statement. However, the testimony of defendant Daley, who was present for all of the interviews, supports the statement. The plaintiff has presented no evidence to the contrary.

[13]The plaintiff denies this statement with respect to Mr. Durkin arguing that "[s]ince Durkin was never interviewed by the nine-member panel, there is no comparison to make." However, the substance of the statement makes no reference to a "comparison." The statement was that the plaintiff did not know how Mr. Durkin performed in his interview. At her testimony, when asked "So you have no knowledge about how [Mr. Durkin] performed during the interview?", the plaintiff's response was "No." (Doc. No. 18, Ex. 2, p. 59).

13

Mr. Durkin had experience disciplining students at the high school level[14]. (Doc. No. 18, Ex. 2, p. 33). At this same meeting, defendant Daley talked with the plaintiff about her focus on surveying during her interview, and expressed that surveying cannot be done at a high school level, with which the plaintiff disagreed[15]. (Id. at p. 34).

After her meeting with defendant Daley, at a School Board meeting held on December 11, 2006, the plaintiff made comments relating to ". . . the interview process and the integrity of the interview process, that [she] did not know that [she] was being interviewed for both [the Principal and Assistant Principal] positions, that an interview – an interviewer became an interviewee days after, so was privy to most – of everything that was being asked." (Doc. No. 18, Ex. 2, pp. 41-42). The plaintiff relayed that she knew that Mr. Timmons was receiving the principal position and that Mr. Durkin was being nominated for the assistant principal positions, and stated that her comments were not against them, but only regarding the interview process and how it related to her. (Id. at 42-43).

After the plaintiff's comments at the School Board meeting, she was called to defendant Daley's office with Business Manager Corey Castellani present. (Doc. No. 18, Ex. 2, p. 43). Defendant Daley indicated to the plaintiff

---

[14]The plaintiff denies this statement. However, as indicated by the plaintiff, her testimony speaks for itself.

[15]See n.14.

that she had taken confidential information and disclosed it at the meeting and that she could not be trusted.  (Id. at 43-44).

The plaintiff never complained that her prior appointments to Gifted Supervisor, Assistant to the Elementary Principal and the Assistant Principal at the Intermediate School were not posted when she received the positions[16]. The plaintiff now claims that, since November of 2006, positions have not been properly posted. The plaintiff testified, however, that, since November of 2006, she learned of an opening for Assistant Principal at the High School at an administrative meeting, but did not apply for the position because she did not feel that she had time to submit a letter of intent[17].  (Doc. No. 18, Ex. 2, pp. 49-50).  At around the same time that the announcement was made at the administrative meeting, the District apparently published a classified advertisement announcing the acceptance of applications for the High School Assistant Principal position. (Doc. No. 18, Ex. 4C). The plaintiff testified that she does not check the newspaper for District job postings because she "figure[s] that the postings will be coming down." (Doc. No. 18, Ex. 2, p. 75).

When asked whether she had any facts to support her claim that the

---

[16]The plaintiff admits this fact, but indicates that she does not know why the positions were not posted.

[17]Although the plaintiff denies this fact as stated, she admits that she was told about the position when interviews had already been scheduled. According to the defendants' materials, the administrative meeting at which the announcement was made occurred on July 21, 2008, and the deadline for submissions was August 4, 2008. (Doc. No. 18, Ex. 4C).

District discriminated against her because of her gender other than the fact that men received the positions, the plaintiff responded, "No. Just that it's – it's the culture of the school . . ."[18] (Doc. No. 18, Ex. 2, p. 54). When asked, "Is there anything specifically that you can point to to support that generalization that you're making that that's just the culture up there?," the plaintiff responded, "I can't recall right now anything. I'm not sure I would think of something."[19] (Doc. No. 18, Ex. 2, p. 55). Upon further questioning, the plaintiff later referenced a conversation with Mrs. Nielsen, a School Board member, who told the plaintiff when she did not get either the High School Principal or Assistant Principal position that ". . . it's a good old boys club up there." (Id.). In addition, the plaintiff testified that she was told that defendant Daley made a comment to two teachers in March or April of 2009, over two years after she had not been offered a position, regarding the handling of a situation involving a student where he stated "What do you expect from a school full of women?" (Doc. No. 18, Ex. 2, pp. 69-71).

The plaintiff testified that she does not know the names of any other females that applied for administrative positions and were not given the

---

[18]The plaintiff denies this statement arguing that the defendants ". . . cannot cherry pick tidbits of testimony . . ." However, the plaintiff's testimony speaks for itself.

[19]See n.18.

positions[20]. (Doc. No. 18, Ex. 2, p. 109).

The plaintiff feels that she has been retaliated against and has not been given any more opportunities because positions have not been posted. (Doc. No. 18, Ex. 2, p. 61). When asked how she believes that the District has retaliated against her because of the comments she made at the December 11, 2006 Board meeting, the plaintiff responded:

A.    Well, I just– I feel that I haven't been given any more opportunities. I feel that the jobs aren't being posted so I can apply.

*    *    *

Q.    . . . Do you believe that the district has purposely not posted positions so that you would not become aware of them?

A.    That's how I feel. That's how I feel.

Q.    Do you have any facts to support that that's what they did?

A.    I don't have facts but they were just not posted[21].

(Doc. No. 18, Ex. 2, pp. 61-62).

In their motion for summary judgment, the defendants initially argue that the plaintiff has failed to present sufficient evidence to support a claim for gender discrimination[22].

---

[20]The plaintiff denies this statement. However, the testimony speaks for itself.

[21]The plaintiff denies this fact. However, the testimony speaks for itself.

[22]Analysis of disparate treatment claims under the PHRA is equivalent (continued...)

Under Title VII, "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a)(1).

To withstand a motion for summary judgment on a disparate treatment claim, the plaintiff must establish that her "protected trait played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." Ulitchney v. Potter, 2006 WL 1722391, at *2 (M.D.Pa. 2006)(Munley, J.)(quoting Monaco v. Amer. Gen. Assurance. Co., 359 F.3d 296, 300 (3d Cir. 2004)). The plaintiff may meet this burden with either direct evidence, see Price Waterhouse v. Hopkins, 490 U.S. 288 (1989), or circumstantial evidence, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

In the instant case, the plaintiff has not provided direct evidence of

---

[22](...continued)
to that under Title VII and other federal anti-discrimination statutes. See, e.g., Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 n.5 (3d Cir. 2006); Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005). Therefore, the court's analysis set forth herein applies to the plaintiff's claims arising under both Title VII and the PHRA.

gender discrimination[23]. As such, the court will examine her claims using the three step burden-shifting analysis set forth in McDonnell Douglas.

Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination by proving the following elements: (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position she held or sought, (3) the plaintiff suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. Johnson v. Keebler-Sunshine Biscuits, Inc., 214 Fed.App'x 239, 241 (3d Cir. 2007)(citing Jones v. School Dist. of Phila., 198 F.3d 403, 410-11 (3d Cir. 1999)); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998).

Once the plaintiff's *prima facie* case is established, the burden shifts to the defendants to articulate some "legitimate, nondiscriminatory reason" for the plaintiff's treatment. Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997). The defendants' burden to prove a legitimate non-discriminatory reason is "relatively light." Johnson,

---

[23]Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference." Woodson v. Scott Paper Co., 109 F.3d 913, 930 (3d. Cir. 1997). An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent." Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999). Therefore, a plaintiff who wishes to establish a *prima facie* case of discrimination using direct evidence "faces a high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998).

2007 WL 215801, at \*3. The defendants are only required to prove that their actions could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required. Iadimarco, 190 F.3d at 157.

Once the defendants have met their burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant[s] are merely pretext for discrimination." Johnson, 2007 WL 215801, at \*2. In order to create a genuine issue of material fact as to whether the defendants' proffered reasons are pretextual, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either: (1) disbelieve the defendants' articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the defendants' action." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)(citing Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)). The plaintiff must do more than show that the defendants were "wrong or mistaken" in failing to hire her for either the Principal or Assistant Principal position. Id. (citing Fuentes, 32 F.3d at 765)). The plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [defendants'] proffered legitimate reasons for [their] action[s] that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the [defendants] did not act for [the asserted] non-discriminatory reasons.'" Id.

20

(citing <u>Fuentes</u>, 32 F.3d at 765 (footnote omitted) (citations omitted)).

In the instant case, the defendants argue in the first instance that there were legitimate, non-discriminatory reasons for not selecting the plaintiff for the positions of High School Principal and Assistant High School Principal[24]. Specifically, the defendants argue that, with respect to the Principal position, the record establishes that the overall consensus of the personnel committee was that the plaintiff was too focused on surveying and forming committees, which is not feasible in the day-to-day operations of a high school. Moreover, while plaintiff had no experience teaching at the high school level[25], Mr.

---

[24]In their original supporting brief, the defendants outline the factors needed to be established by the plaintiff in order to set forth a *prima facie* case, but do not substantively address whether the plaintiff has satisfied those factors. Given this, the plaintiff, in her opposing brief, assumes that the defendants do not dispute that she has adequately set forth a *prima facie* case. The defendants deny this in their reply brief and proceed, for the first time, to substantively address one element of the plaintiff's *prima facie* case. Because the defendants raised their substantive challenge to the plaintiff's *prima facie* case for the first time in their reply brief, the court need not consider their challenge herein. <u>Dreyer v. Sheaffer, 2009 WL 917829</u> *3 (M.D.Pa.)(Caputo, J.)(a district court need not address issues raised for the first time in a reply brief)(citing <u>United States v. Martin, 454 F.Supp.2d 278, 281 n.3 (E.D.Pa. 2006)</u>; <u>Nursery Supplies v. Lerio Corp.</u>, No. 95-cv-1107, 1997 U.S. Dist. LEXIS 21999, at *12, <u>1997 WL 823540 (M.D.Pa. Sept. 19, 1997)</u>(Caldwell, J.)). "A reply brief is intended only to provide an opportunity to respond to the arguments raised in the response brief; it is not intended as a forum to raise new issues." <u>Id.</u> (quoting <u>Martin, 454 F.Supp.2d at 281 n.3</u>))

[25]As previously noted, the plaintiff argues that she completed approximately fifty hours of a practicum at the high school level, but testified that she had never taught at that level.

Timmons had been a high school principal for two years and an Assistant High School Principal for approximately four years.

With respect to the Assistant High School Principal position, the defendants argue that the record establishes that Mr. Durkin, although employed as a guidance counselor, had administrative experience for two years prior to his appointment wherein he would serve as the Head Teacher three days per week essentially acting as the Principal when the Principal was away from the school. During this time, Mr. Durkin was responsible for the teachers and the disciplining of the students. At the time that the plaintiff interviewed, she had only held an administrative position for approximately three months[26]. Moreover, although Mr. Durkin and the plaintiff presented equally well on paper, Mr. Durkin was found to have interviewed better than the plaintiff.

Considering the above, the defendants have met their light burden of setting forth legitimate, non-discriminatory reasons for not placing the plaintiff in either the Principal or the Assistant Principal position. As such, it is the plaintiff's burden to prove by a preponderance of the evidence that the defendants' proffered reasons are pretextual.

With respect to the High School Principal position, the plaintiff has failed

---

[26]While the plaintiff argues that her title as Gifted Supervisor "implied" that she was an administrator, her testimony provides that she had never held an administrative position while employed as the Gifted Supervisor.

to challenge the defendants' contention that Mr. Timmons was selected over the plaintiff because he was simply more qualified. In fact, the plaintiff admitted that Mr. Timmons had more experience at the high school level than did she.

To the extent that the defendants have proffered that the selection of Mr. Timmons was based on interview performances, the plaintiff argues that the defendants have produced no evidence that she did not perform as well as Mr. Timmons during the interview process because they have not produced documentary evidence of the committee's discussions or ratings of the candidates. The defendants have produced, however, the deposition testimony of defendant Daley, supported by statements from each of the members on the personnel committee, which consisted of four females and five males, who all stated that the plaintiff was not the best candidate for the job, in part, based upon her interview performance.

The plaintiff also claims that the defendants' reasons for hiring Mr. Timmons are pretextual claiming that in all of her years in the Valley View School District there has never been a female Principal. The plaintiff admits, however, that she has no evidence with respect to other females that applied for the position and were denied.

For all of the foregoing reasons, the plaintiff has failed to establish that the defendants' reasons for hiring Mr. Timmons were pretextual.

As for the Assistant High School Principal position, the plaintiff argues

that the defendants' proffered reason for choosing Mr. Durkin because of his interview performance is pretextual. Here, the plaintiff argues that Mr. Durkin was chosen for the position without it having been advertised. Moreover, she claims that, while Mr. Durkin was interviewed by a "special" panel, she was not interviewed at all for the position. Even assuming that the plaintiff is correct that the position was never announced[27] and that she was not interviewed for the position, this does not establish, in and of itself, that Mr. Durkin's selection was based upon his gender. In fact, the record establishes that on three different occasions the plaintiff was advanced to positions without having to apply or interview for the positions. Certainly, the plaintiff would dispute that her placement in those positions without having to apply or interview was based upon her gender.

In addition, the plaintiff argues that the defendants proffered reasons are pretextual because ". . . [she] was clearly more qualified than Mr. Durkin . . ." because Mr. Durkin never held an "official" administrative position, while she had served as a full-time administrator for a year and a half prior to her

---

[27]The defendants concede that the position for Assistant Principal was not posted because the vacancy of the Assistant Principal position depended upon who was picked for the Principal position. They contend, however, that all candidates interviewed for the Principal position were informed that they were also being interviewed for the Assistant Principal position. In their statements, two of the committee members interviewing for the Principal position support this contention. (Doc. No. 18, Ex. 4B). However, the plaintiff denies that she was ever informed that she was also being interviewed for the Assistant Principal position.

interview. Concerning the plaintiff's claims, the record establishes that, although Mr. Durkin's "official" title was that of a guidance counselor, for approximately two years he performed administrative duties acting as the Principal when the Principal was out of the office. Moreover, despite the plaintiff's claim that she was in an administrative position for over one year and a half prior to her interview, the record establishes that the plaintiff was in an administrative capacity as an Assistant Principal for a period of approximately three months prior to her interview. To claim otherwise, the plaintiff would contradict her own testimony that she never acted in an administrative capacity while employed as the Gifted Supervisor a term of employment which lasted until she received the Assistant Principal position. Therefore, the plaintiff has failed to establish that the defendants' reasons for hiring Mr. Durkin were pretextual.

Finally, in considering the plaintiff's claim for gender discrimination, the court must consider the plaintiff's own testimony, in which she admitted that she had no facts to support her claim that the defendants discriminated against her because of her gender other than the fact that men received the positions, claiming only that ". . . it's the culture of the school . . ." Upon further questioning, the plaintiff claimed support for this generalization in a stray comment from Mrs. Nielsen, a member of the School Board, that ". . . it's a good old boys club up there" and a comment allegedly made by defendant Daley over two years after the plaintiff did not receive the Principal or

Assistant Principal position in which he allegedly stated "What do you expect from a school full of women?" These statements are simply insufficient to establish by a preponderance of the evidence that the plaintiff did not receive either the Principal or Assistant Principal position on the basis of her gender.

For the reasons set forth above, the defendants are entitled to summary judgment on the plaintiff's claims of gender discrimination set forth in Counts I and III of her complaint.

Next, the defendants argue that the plaintiff cannot establish a First Amendment retaliation claim.

For the plaintiff to establish a *prima facie* case for a First Amendment retaliation claim, she must show that her particular speech involves a matter of public concern and that it was a substantial or motivating factor in the defendant's alleged retaliatory action. Mt. Healthy City Sch. Dist. v. Doyle, 429 U.S. 274 (1977).

Here, the plaintiff has not sufficiently established that she suffered any retaliatory action. Specifically, at her deposition, when asked how she believes that she was retaliated against, the plaintiff testified:

> A. Well, I just– I feel that I haven't been given any more opportunities. I feel that the jobs aren't being posted so I can apply.
>
> *    *    *
>
> Q. . . . Do you believe that the district has purposely not posted positions so that you would not become aware of them?

26

A.    That's how I feel. That's how I feel.

Q.    Do you have any facts to support that that's what they did?

A.    I don't have facts but they were just not posted.

(Doc. No. 18, Ex. 2, pp. 61-62).

Despite her claims, the plaintiff admitted that, since November of 2006, she was informed at an administrative meeting of an opening as Assistant Principal of the High School. At about the same time, this position was apparently also posted in the Classified Section of the newspaper, which the plaintiff admittedly does not check for District job postings. The plaintiff testified that she did not apply for this position because she felt that she did not have enough time to submit a letter of interest.  Thus, the indication is not that the plaintiff has been retaliated against by not having been given any opportunities, but simply that the plaintiff did has not taken advantage of the opportunities that were presented.  On this basis, it is recommended that the defendants' motion for summary judgment on the plaintiff's First Amendment retaliation claim be granted.

As a final matter, because the court has recommended summary judgment on the plaintiff's substantive claims, the remainder of the defendants' sideline arguments, (i.e., that the School District cannot be held liable under §1983, that defendant Daley is entitled to qualified immunity, and the plaintiff has failed to adequately set forth a claim for punitive damages), will not be addressed herein.

## IV. CONCLUSION

On the basis of the foregoing, **IT IS RECOMMENDED THAT:** the defendants' motion for summary judgment, **(Doc. No. 17)**, be **GRANTED**.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date:** August 17, 2010

O:\shared\REPORTS\2008 Reports\08-1585-01.wpd